**Brice GLASGOW, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1049.**

Supreme Court of Alaska.

May 29, 1970.

Arthur Lyle Robson, Elinor B. Levinson, Fairbanks, for appellant.

Stephen Cooper, Asst. Atty. Gen., Anchorage, for appellee.

OPINION

Before BONEY, C. J., and DIMOND, RABINOWITZ, and CONNOR, JJ.

CONNOR, Justice.

Appellant Glasgow was convicted of two counts of an indictment charging four

counts of larceny in a building on September 21, 1966, in violation of AS 11.20.150. On this appeal he asserts various claims of error by the superior court.

Because one of appellant's claims of error relates to his right to a speedy trial, it is necessary to set forth the procedural chronology of the case below.

An indictment charging appellant and two co-defendants with four counts of larceny in a building was returned on September 26, 1966, only a few days after the alleged offenses ocurred.

Appellant was arraigned on September 27, 1966, in the company of his court-appointed counsel, Mr. Dallas Phillips. An early trial was requested by the defense. The state notified the court that it required three weeks' notice of the setting of any trial. On December 27, 1966, the superior court notified both parties by letter that trial was set to commence on April 3, 1967. On this latter date appellant appeared with counsel and sought a continuance to arrange for other counsel from California to represent him because he felt there might exist a possible conflict of interest on the part of Mr. Phillips. The record reflects that Mr. Phillips was to contact appellant's California attorney and arrange for certificates of special admission and affiliation with local counsel. The trial was continued until June 5, 1967, to proceed with local counsel if appellant's California attorney did not appear.

On May 8, 1967, the superior court noted that administrative reasons compelled it to vacate the June 5th trial date. It was further noted that the case would be given priority for purposes of resetting, and counsel were invited to inform the court of any special considerations in that regard. On July 13, 1967, the court notified the parties by letter that trial was set for October 23, 1967. On this latter date Mr. Phillips appeared for the two co-defendants and Mr. E. R. Williams of California appeared as counsel for appellant. Although Mr. Williams explained that he had spoken with the appellant the foregoing Friday and had informed him that he was coming to Fairbanks, appellant was absent. A bench warrant was issued and bond was forfeited. Trial proceeded as to one of the co-defendants.

On November 10, 1967, appellant was extradited to Alaska and was incarcerated. On November 13, 1967, he appeared with Mr. Phillips, associate counsel with Mr. Williams of California, and explained that sickness had prevented his appearance on October 23, 1967. On November 22, 1967, he appeared with Mr. Phillips, at which time bail was reduced to $5000 for a period of sixty days, with appellant to keep in contact with the court. Glasgow was unable to procure bail, however, and was incarcerated.

By a letter dated November 30, 1967, Mr. E. R. Williams notified the District Attorney that he would probably not represent Glasgow because he had not heard from him or any of his family concerning this matter. He suggested that other arrangements should be made and stated that he would file the necessary certificate for special admission if he were to represent the appellant.

On January 1, 1968, appellant wrote to Judge Everett W. Hepp of the superior court requesting bail and a speedy trial. On February 2, 1968, Judge Hepp responded to this letter promising to advise the District Attorney to bring the case on as soon as possible. On May 14, 1968, appellant again wrote to Judge Hepp requesting a speedy trial. On June 12, 1968, the court notified the parties that trial was set for July 8, 1968.

By a letter dated June 25, 1968, appellant again wrote to the superior court asserting his indigence and his desire to have court-appointed counsel. He further stated that he desired an attorney other than Mr. Phillips. On July 1, 1968, he moved to dismiss the case for failure to prosecute. On July 8, 1968, he appeared with counsel, Mr. Phillips. His motion to dismiss the indictment was taken under advisement and his request for the grand jury minutes was

denied because no such minutes had been kept. His motion to relieve Mr. Phillips as counsel was also denied, the court finding Mr. Phillips to be qualified. Trial proceeded.

On July 10, 1968, the court denied appellant's motion to dismiss the indictment, but did grant a judgment of acquittal on Count IV of the indictment. On July 12, 1968, the jury returned its verdicts, finding appellant not guilty on Count I and guilty on Counts II and III of the indictment. On August 13, 1968, a judgment of conviction was entered against him for larceny in a building as charged. He was sentenced to three years' imprisonment on each count, the sentences to run concurrently.

## I

Appellant's first claim of error is that he was arrested in Canada when no warrant existed for his arrest in the United States or elsewhere. It has not been demonstrated either in the proceedings below or on appeal just how the arrest was unlawful or its products were tainted, or how appellant suffered prejudice as a result of his arrest in Canada.

We have noted that an arrest warrant was issued in Alaska the day after the alleged offense, and appellant was taken into custody by the Alaska State Police that same day. Appellant has not directed our attention to any authority which would overcome the rule that the mere illegality of an arrest will not of itself invalidate a conviction. Where a person is found within the territorial jurisdiction of a state and is held and prosecuted under process lawfully issued by the state, neither the jurisdiction of the court nor the right to try the person for the offense charged is impaired because of the manner in which he was brought into the jurisdiction. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct.

509, 96 L.Ed. 541 (1952); Stonehill v. United States, 405 F.2d 738 (9th Cir. 1968).

But in any event no showing has been made that the arrest in Canada was unlawful or that the evidence used against appellant was obtained unlawfully. In the circumstances of this case we find no error.

In his second specification of error, appellant complains that a judgment of acquittal should have been entered on Counts I, II and III. He contends that there was insufficient evidence to support a guilty verdict. Since we reverse on other grounds, it is unnecessary to answer this contention.

Appellant also raises as error the fact that he was denied counsel of his choice, that the evidence before the grand jury was insufficient to support an indictment, and that a secret indictment was obtained against him. For the reasons stated immediately above, we need not consider these specifications of error.

## II

Appellant asserts that because of the delays in bringing him to trial, he was denied his right to a speedy trial guaranteed by both the United States Constitution and the Alaska Constitution.[1]

Under the recent case of Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), the United States Supreme Court, through the due process clause of the Fourteenth Amendment, made applicable to the states the Sixth Amendment right to speedy trial. But it may have accomplished more than this. Before *Klopfer* and the more recent case of Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), there were many bases on which defendants were denied dismissal of criminal proceedings even though delays were considerable. The cases stressed the relativity of the

---

1. U.S.Const. amend. VI: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * *." Alaska Const. art. I, § 11: "In all crimi-nal prosecutions, the accused shall have the right to a speedy and public trial * * *."

right to jury trial; prosecutors' excuses for delay were often accepted with great readiness, and defendants were often required to prove that the delay in being brought to trial was actually prejudicial to the presentation of their defenses.[2] Additionally, waiver doctrines have been employed to hold that defendants who have failed to demand speedy trials shall be deemed to have waived such rights, one such precedent being a decision of this court.[3]

The degree to which the earlier case law on speedy trial is still sound has been thrown into some doubt by the *Klopfer* and *Hooey* decisions. Both stress the burden resting upon the state to bring the accused promptly to trial. Neither case resorts to undue technicalities about the necessity of showing prejudice to the defense, nor are waiver doctrines apparently relied upon.[4]

In *Klopfer,* the defendant was indicted for criminal trespass in connection with a civil rights demonstration. After a mistrial the case was postponed for two terms of court. Finally, the trial court granted the prosecutor's request for a "nolle prosequi with leave," by which the accused is discharged but remains subject to criminal prosecution at the discretion of the prosecutor. The United States Supreme Court held, speaking through Chief Justice Warren, that by indefinitely postponing prosecution, without an apparent justification, the state had denied Klopfer's right to a speedy trial. The decision of the Court was unanimous, although Justice Stewart concurred in the result and Justice Harlan concurred on the ground that the pendency of unliquidated criminal charges for an indeterminate period was in itself a denial of the requirement of fundamental fairness guaranteed by the Fourteenth Amendment.

■ The right to a speedy trial fulfills several purposes. One is to prevent harming the defendant by a weakening of his case as evidence and memory of witnesses grow stale with the passage of time. Another is to prevent prolonged pre-trial incarceration and the infliction of anxiety upon the accused because of long-pending charges. It was this latter element which was stressed in *Klopfer* almost to the exclusion of any others. Lastly, it is recognized that harm is inflicted upon an accused who is serving a sentence in another jurisdiction if he is not promptly allowed to be tried in the jurisdiction where charges are still pending. It was this situation which was treated in *Hooey,* supra.

In *Hooey,* the Court declared that a prisoner in a federal penitentiary had a right to be tried in Texas after he had repeatedly requested the Texas authorities to bring him to trial, but where no attempt had been made by them to obtain the prisoner's temporary release from federal custody. The United States Supreme Court held that the state must make a diligent effort to obtain the accused, when he requests a speedy trial, even though he is incarcerated in another jurisdiction. Before this, most courts had held that no duty

---

2. Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Beavers v. Haubert, 198 U.S. 77, 25 S. Ct. 573, 49 L.Ed. 950 (1905); State v. Hadley, 249 S.W.2d 857 (Mo.1952); State v. O'Leary, 25 N.J. 104, 135 A.2d 321 (1957). See generally, Notes, The Right to a Speedy Criminal Trial, 57 Colum.L.Rev. 846 (1957).

3. United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958); Goss v. State, 390 P.2d 220 (Alaska 1964). See Note, The Lagging Right to Jury Trial, 51 Va.L.Rev. 1587 (1965).

4. There is, as yet, no consensus as to whether Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), requires a demand before the constitutional right to a speedy trial is impaired. Some state courts have taken the position that a demand is required. Cummings v. State, 219 So.2d 673 (Miss.1969); Stone v. State, 450 P.2d 136 (Nev.1969). The language of Hooey would support such a holding: "Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial." 393 U.S. at 383, 89 S.Ct. at 579.

rested on prosecuting officials to bring the accused to trial if he was incarcerated in another jurisdiction.

■■ As a result of *Hooey* and *Klopfer* it is apparent that a positive duty rests upon the courts and prosecutors to see that criminal defendants are afforded a speedy trial. The requirement of a demand, the showing of prejudicial harm to the defendant's case, and the implication of a waiver from the defendant's failure to make a demand arguably are no longer determinative of the claim to a speedy trial.[5] While the presence of a demand or a showing of prejudice to one's case can only help the claim, their absence alone will not necessarily frustrate the right to a speedy trial, including the right to a dismissal of the charges with prejudice when there has been a clear denial of this constitutional right. We reach this conclusion on the basis of our interpretation of article I, section 11, of the Alaska Constitution rather than upon any dispositive holding in *Hooey* and *Klopfer*. To the extent that our ruling today conflicts with our holding in Knudsen v. City of Anchorage, 358 P.2d 375 (Alaska 1960), the latter is overruled.[6]

The waiver doctrine, based on the failure to make a demand, is of particularly dubious authenticity under present constitutional law. A host of recent decisions warn against lightly finding a waiver of fundamental constitutional rights.

As the court observed in People v. Prosser, 309 N.Y. 353, 130 N.E.2d 891 (1955), speaking through Fuld, J.:

"It is the state which initiates the action and it is the state which must see that the defendant is arraigned. It is

likewise the state which has the duty of seeing that the defendant is speedily brought to trial." 130 N.E.2d at 895.

Because the accused is powerless to set an indictment on for trial, although he may move for its dismissal, the court in *Prosser* reasoned that it is the state, acting through it officials, which has the primary obligation of affording to the accused an early trial. See also State of Carrillo, 41 Ariz. 170, 16 P.2d 965 (1932); and State v. Chadwick, 150 Or. 645, 47 P.2d 232 (1935). In People v. Bryarly, 23 Ill.2d 313, 178 N.E.2d 326 (1961), in an opinion by Schaefer, J., the court held that where the prosecuting authorities knew of defendant's incarceration in another state but took no measures to obtain his presence within the prescribed statutory period for trial, the case should be dismissed even though the defendant took no affirmative action to have his case brought on for trial.

■ We are further counseled by the United States Supreme Court, which in *Klopfer,* supra, labeled the right to a speedy trial as "one of the most basic rights preserved by our Constitution." 386 U.S. at 226, 87 S.Ct. at 995. This being true, we must be cautioned by the modern doctrine on waiver of fundamental constitutional rights. A waiver of such rights is not to be inferred from mere silence unless that silence is for some tactical purpose. United States v. Chase, 135 F.Supp. 230 (N.D.Ill.1955); Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966). This is consonant with the general principle running through a number of leading cases in our American con-

---

5. See comment supra note 4.

6. Knudsen v. City of Anchorage, 358 P.2d 375, 378 (Alaska 1960), stated in pertinent part:
   "We believe that the Alaska Constitutional Convention, in adopting the identical language of the Sixth Amendment [of the United States Constitution], intended that section 11 of article I of the Alaska Constitution be interpreted as

securing to an accused such rights to trial by jury as he had been found entitled to under applicable Supreme Court interpretations of the Sixth Amendment."

This interpretation unreasonably restricts the power of the members of this court to fulfill their obligation to uphold the constitution of this state. As such, it must be discarded.

stitutional development, governing waiver of constitutional rights.

We find the warning as early as Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), as well as in the cases cited there, that the courts indulge every reasonable presumption against waiver of constitutional rights, that no acquiescence can be presumed in the loss of fundamental rights, and that "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." This was a case concerning the deprivation of the right to counsel, a right which emanates from the Sixth Amendment, as does the right to speedy trial, and which since the *Klopfer* case can be regarded as no more nor less fundamental than the right to speedy trial. We find these principles reaffirmed as recently as Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in which the Court noted, in connection with the self-incrimination privilege and the right to counsel, that a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived such constitutional rights. The Court noted the high standards of proof which have always been required for the waiver of such basic rights. The reason for the burden of proof of waiver in the custodial interrogation cases is that the state is responsible for establishing the only evidence from which a proof of waiver can be developed. Therefore, the burden is properly placed on its shoulders. 384 U.S. at 475, 86 S.Ct. 1602.

■ These authorities are at odds with the notion that a mere inaction in asserting the right to a speedy trial results in that right being waived. In short, they are in conflict with the holding of this court in Goss v. State, 390 P.2d 220 (Alaska 1964), in which a period of about 14 months between indictment and trial—during which the defendant was incarcerated the entire time—was found not to be a denial of speedy trial because defendant did not actually demand speedy trial or ask for dismissal for lack of prosecution until about 12 of the 14 months had elapsed. The theory behind *Goss* was that the right to speedy trial is a personal right of the accused which may be waived through mere inaction. In light of our interpretation of the speedy trial provision of the Alaska Constitution and the authorities we have discussed on the issue of waiver of fundamental constitutional rights, it is clear that Goss v. State, supra, is no longer tenable either in its holding or its underlying theory. To the extent that it bears upon the right to speedy trial, *Goss* is overruled.[7]

In Alaska we have no statutory provisions by which to measure the definite time within which trial must be held.[8] The time limit within which the accused must be brought to trial in order to satisfy the commands of our federal and state

7. It should be noted that Goss v. State, 390 P.2d 220 (Alaska 1964), was decided well before Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), and at a time when waiver doctrines represented a majority, as well as a respectable, position. Goss was based largely on United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). But Lustman must obviously be reconsidered. Even one of the panel who decided Lustman has recently intimated that it may be "too inflexible and should be modified," United States v. Kelly, 349 F.2d 720, 768 (2d Cir. 1965), per Medina, J.

8. It should be noted that in many states such as Arizona, Illinois, and Oregon, at the time of the decisions in State v. Carrillo, 41 Ariz. 170, 16 P.2d 965 (1932), People v. Bryarly, 23 Ill.2d 313, 178 N.E. 2d 326 (1961), State v. Chadwick, 150 Or. 645, 47 P.2d 232 (1935), statutory provisions implementing their constitutions required trial within a certain number of days from the filing of an information, or at the next term of court in which the indictment was triable, or some other time measure by which to determine a denial of speedy trial. Such statutes usually contain an exception for good cause shown, or for delays caused or consented to by the accused.

constitutions is very imprecise.[9] We have, however, had occasion to deal with this issue in the past.

In Spight v. State [10], 450 P.2d 157, 158 (Alaska 1969), we drew upon Medina v. People, 154 Colo. 4, 387 P.2d 733, 736 (1963), as a general guide, quoting this language:

> "What is a 'speedy public trial'? Most important, it involves a 'trial'—a judicial examination of issues present in a criminal case in order to arrive at a just result. Justice to both the accused and the public is the primary objective. Frankel v. Woodrough, 8 Cir., 7 F.2d 796. See People v. Henwood, 65 Colo. 566, 179 P. 874. 'Speed' is important insofar as it aids in the achievement of such justice. Hence, a speedy trial is a relative concept in that the circumstances of each case determine whether it has been afforded an accused."

In the *Spight* case the defendant had requested some continuances, which were granted; but later certain continuances were granted at the request of the prosecution because of the inability to locate a witness. The total delay because of the prosecution's own requests, and the granting of a mistrial, amounted to about three months. In determining that the defendant had not been denied a speedy trial, we accepted the reasoning of United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), concerning the purposes to be served by the guarantee of a speedy trial, which are "to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." 383 U.S. at 120, 86 S.Ct. at 776. These oppressive forces become less important when the delay is at the instance of the defendant.

■ In the case before us, there was an initial delay of over six months. The indictment was returned on September 26, 1966, and trial was not set to commence until April 3, 1967. On this latter date appellant appeared with counsel and sought a continuance to arrange for other counsel from California to represent him. At this time the trial was continued until June 5, 1967. On May. 8, 1967, the superior court vacated the June 5th trial date because of administrative reasons. Trial was reset for October 23, 1967. On the 23d, counsel for appellant appeared and explained that he was unaware of the reasons for appellant's absence. On November 10, 1967, appellant was extradited to Alaska and was incarcerated [11] until his trial on July 8, 1968. During this period of time appellant twice requested a speedy trial. Excluding those periods of time that can properly be attributed to the appellant, trial was delayed some 14 months.

We find this to be an excessive amount of time within which to bring an accused to trial and, as such, a deprivation of

9. Virtually all of the leading authorities who have studied the matter, however, agree that the right to speedy trial should be fixed in terms of days or months running from a specified event, excluding certain periods of necessary delay or delays at the instance of the defendant, which should also be identified precisely. See Standards Relating to Speedy Trial, § 2.1, Approved Draft, A.B.A. Project on Minimum Standards for Criminal Justice (1968).

10. In Spight this court stated that: "The weight of authority is that unless a resulting delay is purposeful, oppressive, or *prejudicial to the defendant* the granting of a continuance is not a violation of the defendant's constitutional right to a speedy trial." At 159 (emphasis supplied). To the extent that Spight may be interpreted as requiring a showing of *actual* prejudice before a violation of the Sixth Amendment right to a speedy trial is found, this notion may now be laid to rest. We read Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967), to stand for the proposition that no actual prejudice must be shown.

11. It should be noted that whether or not the accused is incarcerated during the period of alleged delay is not dispositive of the issue of denial of a speedy trial.

the constitutional right to a speedy trial[12]. In arriving at this conclusion, we rely on the persuasive reasoning of *Klopfer* and *Hooey* and on our interpretation of section 11, article I of the Alaska Constitution.

It should be noted that in maintaining a proper balance between the needs of the accused and the commitments of the judicial process, we approve of the statement of countervailing principles as set forth in United States v. Ewell, supra:

"[B]ecause of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. * * * '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041." 383 U.S. at 120, 86 S.Ct. at 776.

We think 14 months' delay is an improper balance to strike. Accordingly, appellant's conviction must be and is overturned.

The judgment is reversed, and the case is remanded with direction to dismiss the indictment.

12. In most jurisdictions which set a statutory time limit the permissible delay ranges between 75 days and six months. Cal.Pen.Code, § 1382 (15 days from date held to answer to the filing of an information, and 60 days from the information to trial); Ill.Rev.Stat. c. 38, § 103–5(a) (1965) (120 days from arrest); Wash. Rev.Code §§ 10.37.020, 10.46.010 (1961) (30 days from time held to answer to indictment or information; 60 days from then until trial).

---

The President's Crime Commission has recommended that no more than four months should elapse between arrest and trial in felony cases. President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 155 (1967).