PEOPLE *v.* COLLINS

OPINION OF THE COURT

1. CRIMINAL LAW—SENTENCE—CREDIT FOR TIME SERVED.

The Court of Appeals orders a convicted defendant to be credited with 217 days on his sentence where the record shows that he is entitled to 217 days credit rather than 10 days credit allowed by the trial judge (MCLA § 769.116).

CONCURRENCE BY LEVIN, P. J.

2. CONSTITUTIONAL LAW—SPEEDY TRIAL—DEMAND—WAIVER.

*A defendant's failure to make a formal record-entered demand for a speedy trial constitutes a waiver of his constitutional right to a speedy trial under controlling Michigan precedent.*

3. CONSTITUTIONAL LAW—CRIMINAL LAW—TRIAL—DELAY.

*An accused person awaiting trial is protected from undue delay in the prosecution of the charge made against him by both the constitutional right to a writ of habeas corpus and the constitutional right to a speedy trial.*

4. CRIMINAL LAW—TRIAL—DELAY.

*An indicted person held in prison shall, if he require it, be tried at the next term of the court after the expiration of six months from the time he was imprisoned, or shall be bailed upon his own recognizance unless it appears that the people's witnesses have been enticed, detained, kept away or prevented from attending court (MCLA § 767.38).*

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 545.
[2, 9–11] 21 Am Jur 2d, Criminal Law § 254.
   Waiver or loss of accused's right to speedy trial.   57 ALR2d 302.
[3, 4, 8] 21 Am Jur 2d, Criminal Law § 241 *et seq.*
[5, 6] 39 Am Jur 2d, Habeas Corpus § 40 *et seq.*
[7] 21 Am Jur 2d, Criminal Law § 244.

5. HABEAS CORPUS—BAIL—DISCHARGE.

> *The privilege of the writ of* habeas corpus *is, at least, the right of a person to be admitted to bail if he is not indicted and to be discharged if not tried within a clearly defined period of time.*

6. HABEAS CORPUS—CONSTITUTIONAL LAW.

> *The right to a writ of* habeas corpus *is absolute and cannot be denied where the preconditions of the habeas corpus act have been met; it is therefore incumbent on courts to implement this constitutional right by providing clearly defined, unequivocal procedures for the release of persons held in jail for undue periods of time awaiting trial.*

7. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL.

> *A criminal defendant is entitled to a speedy trial even where he is at large on bail.*

8. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—PREJUDICE —PRESUMPTIONS.

> *Prejudice is conclusively presumed when a criminal defendant is denied a speedy trial.*

9. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—DEMAND.

> *A defendant's failure to demand a speedy trial formally bars him from being discharged for not receiving a speedy trial.*

10. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—DEMAND.

> *The requirement that a defendant make a demand on the record for a speedy trial to enforce his right undermines the right to a speedy trial.*

11. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—DEMAND.

> *The rule that the burden is on a defendant in a criminal case to demand a speedy trial rather than on the prosecution and the courts to see to it that he is given a speedy trial is inconsistent with the constitution and with the language of statutes providing for a speedy trial; cases holding that a defendant must make a formal demand on the record for a speedy trial in order to enforce his right should be overruled.*

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 June 10, 1971, at Detroit. (Docket No. 9684.) Decided October 19, 1971. Leave to appeal granted, 387 Mich 755.

Harold Collins was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Dominick R. Carnovale*, Chief, Appellate Department, and *Robert A. Reuther*, Assistant Prosecuting Attorney, for the people.

*George G. Matish* and *Dorean M. Koenig*, for defendant on appeal.

Before: LEVIN, P. J., and QUINN and V. J. BRENNAN, JJ.

QUINN, J. A review of the trial record, briefs and oral arguments reveals no reversible error. That review does reveal that defendant is entitled to 217 days credit on his sentence pursuant to MCLA § 769-.11b (Stat Ann 1971 Cum Supp § 28.1083[2]), rather than the 10 days credit ordered by the trial judge.

Affirmed, but defendant's sentence is amended to reflect a credit of 217 days thereon instead of 10 days.

V. J. BRENNAN, J., concurred.

LEVIN, P. J., (*concurring*). The principal claim advanced on this appeal is that the defendant, Harold S. Collins, was denied his right to a speedy trial.

Collins was arrested and charged with armed robbery on January 5, 1969. Fifteen months later, April 6, 1970, his trial commenced. He was convicted the following day.

Collins was admitted to bail. Subsequently he was arrested on another charge. He was then kept

in jail for over six months until the trial for the offense which resulted in the conviction he now appeals.

Although Collins asked his lawyer to bring his case to trial, the lawyer neither made a demand for a speedy trial nor sought to have him released on a writ of *habeas corpus*. Under controlling Michigan Supreme Court precedent (see part II, *infra*) the failure of Collins' lawyer to make a formal, record-entered demand constitutes a waiver of his constitutional right to a speedy trial. I write separately because in my opinion the time has long since come to reconsider the demand requirement and other erosions of the constitutional rights to a speedy trial and to a writ of *habeas corpus*.[1] The problem is of such dimensions, involving as it does the allocation of judicial resources at the trial level throughout the state, as to be beyond the competence of this Court to deal with effectively; only the Supreme Court can shape a decree.

## I.

An accused person awaiting trial is protected from undue delay in the prosecution of the charge made against him by both the constitutional right to a writ of *habeas corpus* and the constitutional right to a speedy trial. Both rights have been implemented by statutory provisions.

The rights have a common origin in our organic law:

"To none will we sell, to none will we deny, or delay, right or justice." Magna Charta, art 40.

Over the years the practice developed of sending judges periodically to the various bailiwicks armed

---

[1] See, generally, Notes, The Lagging Right to a Speedy Trial, 51 Va L Rev 1587 (1965); The Right to a Speedy Criminal Trial, 57 Colum L Rev 846 (1957).

with writs of gaol delivery to clear out the jails.[2] A parallel development was the emergence of the writ of *habeas corpus,* hammered out in the great struggles between the crown and the judges and the parliament, as the mechanism by which a judicial inquiry concerning the legality of a detention could be obtained.[3]

The right to the writ, developed at common law, was codified and reinforced in the Habeas Corpus Act of 1679. Under that act, a person committed to jail for treason or felony who petitions in open court to be brought to trial is entitled (1) to be set at liberty upon bail if he is not indicted sometime in the next session after his commitment, and (2) to be discharged if he is not tried by the following session unless it appears upon oath that the witnesses for the King cannot be produced.[4] No person once

---

[2] Coke's Second Institutes, ch 26, p 43; 1 Pollock and Maitland, The History of English Law (2d ed), p 200; 2 *Id.,* p 645; 2 Hale, Pleas of the Crown, p 34; Plucknett, A Concise History of the Common Law (2d ed), pp 151, 380.

[3] See Jenks, The Story of the Habeas Corpus, 18 LQ Rev 64 (1902); 9 Holdsworth, A History of English Law, p 108 *et seq.*

[4] The Habeas Corpus Act of 1679:

"An act for the better securing the liberty of the subject, and for prevention of imprisonments beyond the seas.

"Whereas great delays have been used by sheriffs, gaolers and other officers, to whose custody, any of the King's subjects have been committed for criminal or supposed criminal matters, in making returns of writs of *habeas corpus* to them directed, by standing out an *alias* and *pluries habeas corpus,* and sometimes more, and by other shifts to avoid their yielding obedience to such writs, contrary to their duty and the known laws of the land, whereby many of the King's subjects have been and hereafter may be long detained in prison, in such cases where by law they are bailable, to their great charges and vexation.  *  *  *

"VII. Provided always, and be it further enacted, That if any person or persons shall be committed for high treason or felony, plainly and specially expressed in the warrant of commitment, upon his prayer or petition in open court the first week of the term, or first day of the sessions of *oyer* and *terminer* or general gaol-delivery, to be brought to his trial, shall not be indicted some time in the next term, sessions of *oyer* and *terminer* or general gaol-delivery, after such commitment; it shall and may be lawful to and for the judges of the Court of King's Bench and justices of *oyer* and

delivered by *habeas corpus* could be recommitted *by the crown* for the same offense.[5] A judge who denied, and persons who violated, the writ were subject to an enormous forfeiture (500 pounds [a large sum today, a stupendous sum at the time] for a judge and 100 pounds for others) in favor of the person aggrieved.[6]

"This act made the writ of *habeas corpus ad subjiciendum* the most effective weapon yet devised for the protection of the liberty of the subject, by providing both for a speedy judicial inquiry into the justice of any imprisonment on a criminal charge, and for a *speedy trial* of prisoners remanded to await trial." 9 Holdsworth, A History of English Law, p 118. (Emphasis supplied.)[7]

---

*terminer* or general gaol-delivery, and they are hereby required, upon motion to them made in open court the last day of the term, sessions or gaol-delivery, either by the prisoner or any one in his behalf, to set at liberty the prisoner upon bail, unless it appear to the judges and justices upon oath made, that the witnesses for the King could not be produced the same term, sessions or general gaol-delivery; and if any person or persons committed as aforesaid, upon his prayer or petition in open court the first week of the term or first day of the sessions of *oyer* and *terminer* and general gaol-delivery, to be brought to his trial, shall not be indicted and tried the second term, sessions of *oyer* and *terminer* or general gaol-delivery, after his commitment, or upon his trial shall be acquitted, he shall be discharged from his imprisonment." 31 Charles II, c 2, May 26, 1679 (5 Stat at Large [1660–1690], pp 458–465); reprinted Adams and Stephens, Select Documents of English Constitutional History, p 440; and Sokol, Federal Habeas Corpus (2d ed), p 308.

[5] "A person discharged upon *habeas corpus* is not to be reimprisoned for the same cause; but it is not to be deemed the same cause if he be afterwards committed for the same cause by the legal order of the court in which he was bound to appear, or in which he may be indicted and convicted." 2 Kent, Commentaries on American Law (13th ed), p 31.

[6] "The remedies of the habeas corpus act are so effectual that no man can possibly endure any long imprisonment on a criminal charge, nor would any minister venture to exercise a sort of oppression so dangerous to himself." Hurd, Habeas Corpus (2d ed), p 86.

[7] The act as described by Holdsworth:

"Prisoners indicted for treason or felony must be tried at the next sessions or bailed; but if it appear that the King's witnesses cannot be ready at that time, they may be committed until the

The right to a writ of *habeas corpus* is protected by the Federal and State Constitutions:

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." US Const, art 1, § 9.

"The inhabitants of the said territory shall always be entitled to the benefit of the writ of habeas corpus." Northwest Ordinance 1787, § 14, art II.

"All persons shall, before conviction, be bailable by sufficient sureties, except for capital offences, when the proof is evident or the presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when, in cases of rebellion

following term; if not tried, then they must be discharged." 9 Holdsworth, A History of English Law, p 118.

Blackstone's description of the right secured by the 1679 act, which probably was more available to American lawyers and draftsmen of legislative acts than the precise verbiage of the act itself, in relevant part reads:

"That every person committed for treason or felony shall, if he requires it the first week of the next term or the first day of the next session of *oyer* and *terminer*, be indicted in that term or session, or else admitted to bail; unless the King's witnesses cannot be produced at that time; and if acquitted, or if not indicted and tried in the second term or session, he shall be discharged from his imprisonment for such imputed offense." 3 Blackstone, Commentaries on the Laws of England, ch 8, pp 136, 137 (1768).

Among other descriptions of the rights secured by the act are the following:

"By the specific provisions which we have considered, the remedy for all unjust detention is distinctly marked; and even in cases of valid imprisonment, care is taken that it be not unreasonably or unnecessarily protracted. * * * And prisoners indicted are to be tried at the next court after such indictment found, or they will be entitled to be discharged, unless the trial was postponed at their instance, or satisfactory cause shown by the public prosecutor for delay." 2 Kent, Commentaries on American Law (13th ed), pp 31, 32.

"At common law and under the famous Habeas Corpus Act of 1679 the use of the Great Writ against official restraints was simply to ensure that a person was not held without formal charges and that once charged he was either bailed or brought to trial within a specified time." Oaks, Habeas Corpus in the States—1776–1865, 32 U Chi L Rev, 243, 244, 245 (1965).

or invasion, the public safety may require it." Const 1835, art 1, § 12.[8]

It is probably not without some significance that the dual rights to be released on bail and to the privilege of the writ of *habeas corpus* were originally written side-by-side in Michigan's first Constitution; see art 1, § 12 of the Constitution of 1835 just quoted. The substance of the 1835 constitutional provision was carried forward with minor changes in phraseology in the Constitutions of 1850,[9] 1908,[10] and 1963.[11]

The right of persons accused of crime who have been committed to jail to be indicted or let to bail and after indictment to be tried or discharged within a definite period of time is set forth in an 1820 territorial enactment of the governor and judges in language obviously based on the Habeas Corpus Act of 1679:

"That when any prisoner, committed for any offence, the punishment whereof is capital, shall apply to the court, on or before the fifth day of the term, by petition or motion and shall desire to be brought to his trial before the end of the term, and shall not be indicted in that term, unless it appear by affidavit that the witnesses against him cannot be produced in time, the court shall set him at liberty,

---

[8] Since the privilege of the writ is rooted in the Constitution there is no need to consider whether the English statutes of general application are part of the common law of this State. Compare *Trask* v. *Green* (1861), 9 Mich 358, 365, and *Matter of Lamphere* (1886), 61 Mich 105, 108, with *In re Sanderson* (1939), 289 Mich 165, 174. See discussion in Brown, British Statutes in American Law 1776–1836 (1964, Michigan Legal Studies), p 169 *et seq.*

[9] Const 1850, art 4, § 44 (*habeas corpus*); art 6, § 29 (bail).

[10] Const 1908, art 2, § 11 (*habeas corpus*); art 2, § 14 (bail).

[11] "The privilege of the writ of habeas corpus shall not be suspended unless in case of rebellion or invasion the public safety may require it." Const 1963, art 1, § 12.

"All persons shall, before conviction, be bailable by sufficient sureties, except for murder and treason when the proof is evident or the presumption great." Const 1963, art 1, § 15.

upon his giving bail in such sum as they shall think reasonable, to appear before them at a day to be appointed of the succeeding term.

"That every person charged with a crime or misdemeanor, who shall not be indicted before, or at the second term after he shall have been committed or let to bail, unless the attendance of the witnesses against him appeared to have been prevented by himself, shall be discharged from his recognizance or imprisonment, if he be detained for that cause only; and if he be not tried, at or before the third term after his examination before the judge or justice, or arrest, he shall be discharged." 1 Territorial Laws, Act of May 11, 1820, §§ 24, 25, p 596.

This 1820 act was reenacted verbatim by the legislative council of the Territory of Michigan on April 22, 1833.[12] It was in that context that the privilege of the writ of *habeas corpus* was written into Michigan's first Constitution by the framers and adopted by the people.

The language of the territorial acts was significantly modified by the Legislature in 1838, immediately after Michigan was admitted to statehood. Henceforth, a person held in prison shall be discharged if he is not indicted before the end of the second term of court, and, if indicted, "shall, if he require it, be tried at the next term of the court after the expiration of six months from the time when he was imprisoned, or shall be bailed upon his own recognizance" unless in either case it shall appear to the satisfaction of the court that the witnesses on behalf of the state have been enticed or kept away or are detained and prevented from attending court by sickness or some inevitable accident.[13]   These

---

[12] See 3 Territorial Laws, Act of April 22, 1833, §§ 24, 25, p 1146.

[13] See Revised Statutes, 1838, part 4, title 2, ch 3, § 13, p 665, § 23, p 667.

statutory provisions have been carried forward without any charge in language to the present.[14]

The legislative change in 1838 of the consequence which attaches to a delay in trying a criminal charge lodged against a person held in jail cannot properly be read as vitiating the right secured constitutionally in 1835 to be discharged from imprisonment on a writ of *habeas corpus* without further delay if the accused person has petitioned in open court to be tried and his case is not tried at the next session, unless the state's witnesses cannot be produced.

While the nature of the substantive right to a writ of *habeas corpus* is not defined in our Constitution it is manifest that the right constitutionally protected is the right spelled out in the Habeas Corpus Act of 1679. The privilege of the writ, if nothing else, is the right to be admitted to bail if not indicted and to be discharged if not tried within a clearly defined period of time unless the people are unable to present their proofs.

"These historical incidents all lead to the conclusion that to suspend the privilege of *habeas corpus in the constitutional sense* is to deprive persons accused of crime of their right either to be speedily accused and tried or to be set free." Collings, Habeas Corpus for Convicts—Constitutional Right or Legislative Grace?, 40 Cal L Rev 335, 340, 341 (1952). (Emphasis supplied.)[15]

[14] See MCLA § 767.26 (Stat Ann 1954 Rev § 28.966); MCLA § 767.38 (Stat Ann 1954 Rev § 28.978).

[15] "The explicit and peremptory provisions of the statute of 31 Charles II, c 2 [the Habeas Corpus Act of 1679], restored the writ of *habeas corpus* to all the efficacy to which it was entitled at common law, and which was requisite for the due protection of the liberty of the subject. That statute has been reenacted or adopted, if not in terms, yet in substance and effect, in all the United States. The privilege of *this* writ is also made an express constitutional right at all times, except in cases of invasion or rebellion, by the Constitution of the United States, and by the constitutions of most of the states in the union. The citizens are declared, in some of these

See, also, *People* v. *Den Uyl* (1948), 320 Mich 477, 486.

"That act [the habeas corpus act of 1679] gave no new right to the subject, but it furnished the means of enforcing those which existed before.[16] * * *

"The state constitutions recognize the writ of *habeas corpus* as an existing remedy in the cases to which it is properly applicable, and designate the courts or officers which may issue it; but they do not point out the cases in which it may be employed. Upon this subject the common law and the statutes must be our guide; and although the statutes will be found to make specific provision for particular cases, it is believed that in no instance which has fallen under our observation has there been any intention to restrict the remedy, and make it less broad and effectual than it was at the common law." 1 Cooley, Constitutional Limitations (8th ed), p 723.

The right to a writ of *habeas corpus* is absolute. The right to the writ cannot be denied where the preconditions spelled out in the habeas corpus act have been met. The right can be suspended only when "in cases of rebellion or invasion, the public safety may require it". Like Magna Charta, *habeas corpus* is, to quote Coke's famous dictum, "such a fellow that he will have no sovereign".[17]

It is not open to any authority, executive, legislative or judicial, to deny or "suspend" the privilege

constitutions, to be entitled to enjoy the privilege of the writ in the most 'free, easy, cheap, expeditious, and ample manner'; and the right is equally perfect in those states where such a declaration is wanting. The right of deliverance from all unlawful imprisonment, to the full extent of the remedy provided by the habeas corpus act is a common law right; and it is undoubtedly true, as has been already observed, that the common law of England, so far as it was applicable to our circumstances, was brought over by our ancestors upon their emigration to this country." 2 Kent, Commentaries on American Law (13th ed), pp 26, 27. (Emphasis supplied.)

[16] Similarly, see Hurd, Habeas Corpus (2d ed), p 83.

[17] Debate in Commons, May 17, 1628. Bartlett, *Familiar Quotations* (13th ed 1955), p 110.

of the writ except in the extraordinary case spelled out in the Constitution itself. It is, therefore, incumbent on the courts—if not their highest duty, among their important duties[18]—to implement the constitutional right to the issuance of a writ of *habeas corpus* by providing clearly defined, unequivocal procedures for the release of persons held in jail for undue periods of time awaiting trial equivalent to those spelled out in the Habeas Corpus Act of 1679:

(a) periodically, at clearly established periods of time, it should be the absolute duty of a judge to require that there be brought before him all persons held in jail for more than a designated time and to give them an opportunity to demand their right to an immediate trial;

(b) if the right is exercised and, nevertheless, the case is not tried within a prescribed period of time, then, unless the people are unable during that time to present their witnesses, the defendant should be discharged from imprisonment without further ado upon application for the issuance of a writ of *habeas corpus.*

It is the manifest duty of the courts to see to it that the necessary judges and supporting personnel are provided so that, except in the most extraordinary circumstances, such as a civil disturbance, the trial of criminal cases, particularly jail cases, is not delayed by accumulated backlogs of other cases that have not been tried. See *Wayne Circuit Judges* v. *Wayne County* (1971), 386 Mich 1. Failure to provide the necessary means, inability of the people to present their witnesses and to prove their case be-

---

[18] "It must never be forgotten that the writ of *habeas corpus* is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." *Bowen* v. *Johnston* (1939), 306 US 19, 26 (59 S Ct 442, 446; 83 L Ed 455, 461).

cause of an accumulated chronic backlog of cases, cannot justify any longer the suspension and denial of this basic constitutional right. It should be remembered that the Habeas Corpus Act of 1679 was enacted in response to abuses which had "crept into daily practice, which had in some measure defeated the benefit of this great *constitutional remedy*".[19] (Emphasis supplied.)

Obviously, higher judicial authority must establish the precise periods of time. Clearly they do not have to be the same time periods prescribed in the Habeas Corpus Act of 1679, which were based on the court calendars of the time. The precise time is, no doubt, flexible, but the concept that all prisoners should periodically be brought to the bar of justice and given an opportunity to demand an immediate trial, and if the right is exercised and the case is not tried within a clearly defined period of time the prisoner is entitled to be discharged from imprisonment, is not flexible and must be implemented.

"It is not only a *constitutional* principle, as we have already seen, that no person shall be deprived of his liberty without due process of law, but *effectual provision* is made against the continuance of all unlawful restraint or imprisonment, by the security of the privilege of the writ of *habeas corpus.* * * *

"The habeas corpus act has always been considered in England as a stable bulwark of civil liberty, and nothing similar to it can be found in any of the free commonwealths of antiquity. Its excellence consists in the easy, prompt and efficient remedy afforded for all unlawful imprisonment, *and personal liberty is not left to rest for its security upon general and abstract declarations of right."* (Emphasis supplied.)  2 Kent, Commentaries on American Law (13th ed), pp 26, 32.

---

19 3 Blackstone, Commentaries on the Laws of England, ch 8, p 135 (1768).

## II.

The constitutional right to a speedy trial is broader than the privilege of incarcerated persons to a writ of *habeas corpus*.   In Michigan the right to a speedy trial obtains even though the accused person is at large on bail awaiting trial,[20] and it is not incumbent on him to show that he was prejudiced by the delay.   Under the law of this state, "injury is conclusively presumed".   *People* v. *Den Uyl* (1948), 320 Mich 477, 494.[21]

In this case the interval between the time that the defendant Collins was first arrested and the time when he was tried was 15 months.

In *Hicks* v. *Judge of Recorder's Court of Detroit* (1926), 236 Mich 689, a delay in 15-1/2 months was held to be unreasonable in the case of a lawyer charged with the offense of perjury who was at large on bond during the intervening period.   The Supreme Court ordered an immediate trial.

In *Glasgow* v. *State* (Alaska, 1970), 469 P2d 682, the Supreme Court of Alaska ruled that a delay of some 14 months, excluding periods of time that could properly be attributed to the defendant, was unreasonable and reversed the defendant's conviction and directed that he be discharged.

There is no need in this case to express an opinion whether the delay in this case was under all the circumstances unreasonable entitling Collins to be

---

[20] "This Court and others have recognized that the privilege is a protection, not only against the hardships of imprisonment, but also against the harassment of being subjected to accusation, with its harmful effect on the defendant's reputation and business affairs. [Citations omitted.]   The fact that the defendant is at liberty is a fact to be taken into consideration with the others in determining whether the case has been delayed for an unreasonable time." *People* v. *Den Uyl* (1948), 320 Mich 477, 490, 491.

[21] Similarly, see *Pitts* v. *North Carolina* (CA4, 1968), 395 F2d 182, 185.

discharged. Under the law of this state, even if it were to be found that the delay was unreasonable, he would be barred from obtaining relief because he did not file a formal demand in the Recorder's Court insisting upon recognition of his constitutional right to a speedy trial.

Michigan adopted the demand requirement in *People* v. *Foster* (1933), 261 Mich 247.[22] Subsequently, in *People* v. *Duncan* (1964), 373 Mich 650, 656, our Supreme Court declared: "Since *Foster*, it has not been questioned in this State that formal, record entered, demand is required to invoke the constitutional guaranty". This rule was reiterated in *People* v. *Miklovich* (1965), 375 Mich 536, 539. Similarly, see *People* v. *Krum* (1965), 374 Mich 356, 363.

While it appears that these statements by our Supreme Court were in each instance made in a case where the defendant was at large on bail during the entire period intervening between his arrest and the time that the case was set for trial or formal record-entered demand was made, that factual distinction would not justify us in applying, without notice to the prosecutors and trial judges of this state, a different rule in cases where the accused person is incarcerated.[23] It does appear, however, that considerations not relevant in the case of an incarcer-

---

[22] *Foster's* reasoning that (p 252) "where defendants are on bail and do not appear in court demanding trial, they have little reason to complain of delay. [Citation omitted.] They are not under the oppression of the government which the provision was designed to prevent" conflicts with the later statement in *Den Uyl* (p 490) that, "This Court and others have recognized that the privilege is a protection, not only against the hardships of imprisonment, but also against the harassment of being subjected to accusation, with its harmful effect on the defendant's reputation and business affairs".

[23] But see *Rutherford* v. *State* (Alaska, 1971), 486 P2d 946, where a closely divided Alaska Supreme Court applied retroactively the rule enunciated in *Glasgow* v. *State* (Alaska, 1970), 469 P2d 682, discussed, *infra*, in text preceding fn 26.

ated accused person may have motivated the Supreme Court in adopting the demand requirement. This suggests that the demand requirement should be reconsidered at least as it affects an incarcerated accused person.

In this case Collins was represented by a retained lawyer. Claiming that his lawyer had not been representing him adequately, Collins filed a grievance with the State Bar on March 4, 1970, and substitute assigned counsel was appointed for him shortly before his trial. It appears that his retained lawyer was subsequently admonished by the State Bar in connection with the grievance. Obviously, Collins, a layman, could not be expected to be aware of the demand requirement and especially that nothing less than a "formal, record entered, demand" would suffice.

The demand requirement does not enforce, rather it undermines, the constitutional right to a speedy trial. The constitutional right is meaningless unless it is enforced. But, except for Hicks, a lawyer, and Den Uyl, a wealthy man, who were represented by diligent counsel, I find no Michigan case enforcing the right. For the impecunious, incarcerated accused person who is dependent on a lawyer burdened with competing engagements the speedy trial clause is a collection of empty words.

The demand requirement does, indeed, have the support of the weight of authority.[24] In some jurisdictions, however, the burden is placed on the prosecutor to advance the case for trial, and if the accused person is denied his right to a speedy trial he may be discharged on that account.[25]

---

[24] See Anno: Waiver or loss of accused's right to speedy trial, 57 ALR2d 302, 326.

[25] *Op cit,* p 334.

The minority view was recently approved by the American Bar Association when it adopted the Standards Relating to Speedy Trial of the ABA Project on Minimum Standards for Criminal Justice. Standard § 2.2 provides that "the time for trial should commence running, without demand by the defendant". That view also has the support of respectable judicial authority.

In *People* v. *Bryarly* (1961), 23 Ill 2d 313, 319 (178 NE2d 326, 329), Justice Schaefer, speaking for a unanimous Illinois Supreme Court, declared:

"The constitutional guarantee of a speedy trial contemplates that the means that are available to meet its requirements shall be utilized. Under the circumstances of this case we think that the burden of taking the steps necessary to bring about a prompt trial rested upon the people. When the Legislature intended that a defendant should take affirmative action to prevent the delay of his trial, it expressly so provided [citations omitted].

"Although the defendant wrongfully left the jurisdiction of the court, the prosecution knew where he was and could have initiated proceedings to return him to Illinois for trial."

In *People* v. *Prosser* (1955), 309 NY 353 (130 NE2d 891, 895), Judge Fuld, for a unanimous New York Court of Appeals, declared:

"It is the state which initiates the action and it is the state which must see that the defendant is arraigned. It is likewise the state which has the duty of seeing that the defendant is speedily brought to trial. And from this it follows that the mere failure of the defendant to take affirmative action to prevent delay may not, without more, be construed or treated as a waiver."

It is true that the New York statute expressly provided that where the right to a speedy trial is

denied, "the court may, on application of the defendant, order the indictment to be dismissed, unless good cause to the contrary be shown", and our statute does not so provide. It cannot, however, reasonably be argued that this is a distinction of any importance. Although our statute does not provide the consequence that follows a denial of the constitutional right, unless a court may, in consequence of the denial of the right, dismiss the information, it is without meaningful remedy to enforce the right. In *Den Uyl* the Court directed that proceedings be completed within 60 days or that they be dismissed and the defendants discharged, thereby recognizing that Michigan courts have the power, independently of statute, to discharge a defendant for failure to give him a speedy trial.

The issue then is not whether Michigan courts have the power, constitutional or statutory, to dismiss an information and discharge the defendant. Obviously, they have. The issue is whether, as a condition precedent to the exercise of this power, the court should impose on the accused person a requirement that he shall have formally demanded his constitutional right.

In *Prosser,* the New York Court of Appeals declared that the speedy trial guaranty serves a threefold purpose:

"It protects the accused, if held in jail to await trial, against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and, finally, like statutes of limitation, it prevents him from being 'exposed to the hazard of a trial, after so great a lapse of time' that 'the means of proving his innocence may not be within his reach'—as, for instance,

by the loss of witnesses or the dulling of memory."
*People* v. *Prosser, supra,* p 356 (130 NE2d p 893).[26]

In *Glasgow* v. *State* (Alaska, 1970), 469 P2d 682,
686, the Supreme Court of Alaska concluded, on the
basis of its "interpretation of article 1, section 11, of
the *Alaska* Constitution" (emphasis supplied) that
"while the presence of a demand or a showing of
prejudice to one's case can only help the claim, their
absence alone will not necessarily frustrate the right
to a speedy trial, including the right to a dismissal
of the charges with prejudice when there has been
a clear denial of this constitutional right". In
reaching that conclusion, the Court relied on the
reasoning of the New York Court of Appeals in
*Prosser* and of the Illinois Supreme Court in *Bry-
arly.*[27] The Court was also influenced by the United

---

[26] "This guarantee is an important safeguard to prevent undue
and oppressive incarceration prior to trial, to minimize anxiety and
concern accompanying public accusation and to limit the possibilities
that long delay will impair the ability of an accused to defend him-
self." *United States* v. *Ewell* (1966) 383 US 116, 120 (86 S Ct 773,
15 L Ed 2d 627).

[27] In *Zehrlaut* v. *State* (1951), 230 Ind 175 (102 NE2d 203), the
Supreme Court of Indiana declared that its statute, entitling an
accused person to be discharged if his case is not tried within three
terms of court unless he causes the delay, was declarative of the con-
stitutional right:

"No court has jurisdiction to amend or disregard either the Con-
stitution or its implementing statute, nor can a court exercise a
judicial discretion exceeding the limitations thereby imposed."

An Arizona rule of criminal procedure provides in terms similar
to the Indiana statute that for delay in indictment or trial beyond
the specified times, "the prosecution shall be dismissed". In *State*
v. *Maldonado* (1962), 92 Ariz 70, 75 (373 P2d 583, 585, 586), the
Supreme Court of Arizona declared that its rule was intended to
implement the speedy trial provision of the Arizona Constitution and
that "to effect the purposes underlying the constitutional provision
this court follows the minority rule that an accused need not demand
a trial in order to avail himself of the protection" of the rule. In
so ruling the court relied in part on the Habeas Corpus Act of 1679.

Colorado, another state with a statute reading much like the
Habeas Corpus Act, providing that a person committed for a crim-
inal offense and not admitted to bail shall be tried by the second
term of court or set at liberty unless he causes the delay, has ruled
that the statutory right is expressive of the constitutional right to a

States Supreme Court's declaration in *Klopfer* v. *North Carolina* (1967), 386 US 213, 226 (87 S Ct 988, 995; 18 L Ed 2d 1, 9), that the constitutional right to a speedy trial was "one of the most basic rights preserved by our Constitution" and the established rule that "waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege".[28]    More recently the Alaska Supreme Court reiterated its holding in *Glasgow* and observed:

"[W]e feel it is too much to expect of human nature that a defendant must demand a speedy trial to receive one when he has no assurance as to the outcome of trial.    The uncertainty as to the verdict can bring indecision to the innocent as well as the guilty. While trial should vindicate the innocent, such a defendant may nevertheless be apprehensive about

speedy trial and there is no duty on the part of the defendant to demand trial within the specified time:

"[N]otwithstanding the holdings of courts of last resort in other jurisdictions to the contrary, this Court has clearly indicated that the defendant is not under a duty to demand trial within any specific time before he can claim the protection of a mandatory provision of the *Constitution* which says that he 'shall have the right to * * * a speedy public trial * * * '.    As said in *In re Miller* [(1919), 66 Colo 261 (180 P 749)]: ' *  *  *  There is no attempt to justify or explain the delay and we must conclude that none is possible.    It was distinctively the duty of the prosecution to move in the matter *  *  *  '." (Emphasis supplied.) *Hicks* v. *People* (1961), 148 Colo 26, 30 (364 P2d 877, 879, 880).

Another state with a similar statute is Kansas.    The Supreme Court of Kansas ruled that a defendant who was on bond throughout the statutory time span was entitled to the benefit of the statute and to be released upon expiration of that time period without regard to whether he had demanded a speedy trial:

"An accused need not insist upon, nor even ask for a speedy trial, nor need he protest against or object to the delay.    Failure to object to continuance is not equivalent either to an application for such continuance or to a consent to the state's request for a continuance.    [Citations omitted.]    All that a defendant needs to do to retain the protection of the constitutional guaranty is to refrain from any affirmative act, application or agreement, the necessary and direct effect of which will be to delay the trial." *State* v. *Hess* (1956), 180 Kan 472, 475 (304 P2d 474, 479).

28 *Johnson* v. *Zerbst* (1938), 304 US 458, 464 (58 S Ct 1019, 82 L Ed 1461).

the outcome, for even his innocence has not prevented him from reaching the trial stage of the criminal process. Thus, the innocent defendant is presented with two unhappy alternatives: either not to demand trial, hoping the state will not prosecute, or to demand trial, hoping to vindicate himself in spite of his fear of being found guilty."[11] *Rutherford* v. *State* (Alaska, 1971), 486 P2d 946, 950.

In *Dickey* v. *Florida* (1970), 398 US 30, 49, 50 (90 S Ct 1564, 1574, 1575; 26 L Ed 2d 26, 38, 39), Mr. Justice Brennan filed a separate concurring opinion, also signed by Mr. Justice Marshall, in which he addressed himself to some problems that he thought ought to be considered in defining the speedy trial guarantee. Among the problems alluded to was the demand requirement. He said:

"The view that an accused loses his right to a speedy trial by silence or inaction is open to question on at least three grounds. First, it rests on what may be an unrealistic understanding of the effect of delay. * * * It is true the delay may be welcomed by an accused. * * * But an accused may just as easily object to delay for its prolongation of the time in which he must live in uncertainty, carrying the emotional and financial burdens of accusation, and possessing the conditioned freedom of a potential felon. Moreover, the passage of time may threaten the ability of both the defendant and the government to prepare and present a complete case; in this regard, delay does not inherently benefit the accused any more than it does the prosecution.

"Second, the equation of silence or inaction with waiver is a fiction that has been categorically rejected by this Court when other fundamental rights are at stake. * * * Thus, can it be that affirma-

---

[11] Chief Justice Burger has noted that to expect a criminal defendant to insist on his own trial is inconsistent with human nature. The State of the Judiciary—1970 [56 ABAJ 929], 931."

tive action by an accused is required to *preserve*—
rather than to *waive*—the right?

"Third, it is possible that the implication of waiver from silence or inaction misallocates the burden of insuring a speedy trial. The accused has no duty to bring on his trial. He is presumed innocent until proven guilty; arguably, he should be presumed to wish to exercise his right to be tried quickly, unless he affirmatively accepts delay. The government, on the other hand, would seem to have a responsibility to get on with the prosecution, both out of fairness to the accused and to protect the community interests in a speedy trial." (Emphasis by Justice Brennan.)

The rule that the burden is on the defendant to demand a speedy trial rather than on the prosecutor and the court to see to it that the defendant is given a speedy trial cannot be squared with the unmistakeable language of our statutes:

"The people of this state and persons charged with crime are entitled to and shall have a speedy trial and determination of all prosecutions and it is hereby made the duty of all public officers having duties to perform in any criminal case, to bring such case to a final determination without delay except as may be necessary to secure to the accused a fair and impartial trial." MCLA § 768.1 (Stat Ann 1954 Rev § 28.1024).

"The trial of criminal cases shall take precedence over all other cases. * * * No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown. * * * [N]o court shall adjourn, continue or delay the trial of any criminal cause by the consent of the prosecution and accused unless in his discretion it shall clearly appear by a sufficient showing to said court to be entered upon the record, that the reasons for such consent are founded upon strict neces-

sity and that the trial of said cause cannot be then had without a manifest injustice being done." MCLA § 768.2 (Stat Ann 1954 Rev § 28.1025).

Prosecutors and courts are, thus, under a statutory as well as a constitutional duty to the people and to accused persons to try them "without delay except as may be necessary to secure to the accused a fair and impartial trial". Even if the failure of an accused person to educate himself concerning the demand requirement and to make a demand is regarded as consent to delay, such consent does not, under our statutes, relieve the court of its obligation to order the case tried unless it *clearly* appears by a *sufficient* showing *entered upon the record* that the *reasons* for the consent are founded upon *strict necessity* and that the trial *cannot* be *then* had without a manifest injustice being done.

In this case there was no compliance by the prosecutor or by the court with these statutory requirements. It is fair to say that these statutory requirements are honored more in the breach than in the observance. If these requirements are to be more than empty words, then it will be necessary to overrule *Foster* and its progeny and to underscore that which the statutes and the Constitution clearly mean: it is the obligation of the prosecutor, not of the accused person subsisting in his cell, to advance the prosecution and to see to it that the accused is speedily tried; it is the obligation of the court to provide the means of enforcing and to enforce that imperative duty.

The Administrative Board of the Judicial Conference of the State of New York and the United States Court of Appeals for the Second Circuit pointed the way when earlier this year they announced the adoption of rules designed to assure prompt trial and disposition of criminal cases. Effective July

5, 1971, in the Second Circuit and May 1, 1972, in New York, in all cases where a defendant, except one accused of homicide, is detained in jail, the prosecutor must be ready for trial within 90 days from the date of arrest or the defendant will be released on bail or on his own recognizance unless good cause is shown for continued detention; and, whether the defendant is in jail or at large, he must be tried within six months of his arrest or the case will be dismissed with prejudice unless the time limit is extended for good cause as specified by the rules. Demand is not necessary to trigger the speedy trial rights conferred by the rules, but if the defendant does not move for release or dismissal he waives these rights.[29]

In March of this year the Florida Supreme Court adopted an emergency rule requiring that every person charged with a crime be brought to trial without demand within 90 days if the crime charged is a misdemeanor and within 180 days if it is a felony. The time periods apply without regard to whether the defendant is released on bail. If the rule is violated the defendant may file a motion with the appropriate court and have the charges against him dismissed.[30]

---

[29] See 9 Crim L Rep 2186 for announcement of New York Rules; USCA, May, 1971 Supp, p 967 for Second Circuit Rules; see Comment, Speedy Trials and the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, 71 Colum L Rev 1059 (1971).

[30] See 8 Crim L Rep 2453; see, also, Comment, Crowded Dockets No Longer Justify Denial of Speedy Trial, 23 U Fla L Rev 603 (1971).